LEWIS *v.* HOUCHINS.

4-9807

249 S. W. 2d 1

Opinion delivered May 26, 1952.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.

*Frank C. Douglas,* for appellee.

MINOR W. MILLWEE, Justice. This is a dispute over the location of a boundary line between two residential lots in the City of Blytheville.

Appellants, T. L. Lewis and Ada Lewis, purchased Lot 75, Original Survey of the City of Blytheville, in January, 1944. At that time Lot 75 was vacant and appellee, Addie B. Houchins, owned and resided on Lot 74 which lies north of and adjacent to Lot 75.

Appellants first filed suit in August, 1944, claiming that appellee was trespassing about five feet upon the

north side of their lot. After much delay and two non-suits, a trial on June 20, 1950, resulted in a directed verdict and judgment for appellants. At the request of counsel for both parties the county surveyor made a second survey of the lots. Upon submission of his findings to the trial court, the former judgment was vacated on the court's own motion and a new trial ordered. This appeal is from a judgment for appellee following a second trial before the court sitting as a jury.

The lots in question each have a frontage of 56 feet facing west on Lake Street and the dividing line between the lots commences at a mark in the concrete sidewalk in front of said lots and runs easterly to an alley. The only issue before the court was whether the dividing line runs at right angle to Lake Street, as contended by appellants, or whether said line runs parallel with the east and west section line with a slight variance to the south, as contended by appellee.

The judgment contains findings as follows on this point: "The court finds from the evidence adduced by the parties that the east and west lines of said lots 74 and 75 do not run at right angles from Lake Street, but run at a slight variance the same as the north line of the section, and that by running this dividing line parallel with said section line will give each lot its full 56 feet frontage on both the front and back side of said lots, or on the west and east end of said lots, and that such line running from the mark on the sidewalk back to the alley on the east side of said lots will intersect the east line of said lots at a point two feet south of the southeast corner of the defendant's tenant house now located on the east side of lot 74.

"The court further finds that the block in which said lots 74 and 75 are located is full, and that each of the four lots in said block have a frontage of 56 feet on Lake Street, and a like frontage of 56 feet on the alley east of said block when the side lines to said lots run east and west with the same variance as shown for the north section line. Under the evidence the court finds for defendant."

The common source of title to the two lots is H. T. Blythe who conveyed the property to Rebecca Simpson in 1885 under a metes and bounds description. In 1903 Rebecca Simpson conveyed the north 63 feet of the tract to appellee's predecessors in title and the south 63 feet was conveyed to appellants' predecessors in title. In 1905 H. T. Blythe filed in the clerk's office a plat of the Second and Third Additions to the Town of Blytheville which shows the property as Lots 74 and 75 and as being 56 feet north and south instead of 63 feet as originally conveyed by Blythe. This plat contains a cancellation notation by the chancery clerk dated October 1, 1915, under purported authority of a chancery court order, but no such order was produced at the trial.

W. D. Cobb, who was subpoenaed by appellants but called as a witness by appellee, testified that he moved to Blytheville in 1943 and was subsequently elected county surveyor. In 1944 he made a survey and drawing of Lot 75 for appellants in connection with their application for an FHA loan from the Government. At that time he had never made a survey in that area of the city and upon inspection of the above-mentioned plat assumed that the east and west lines of the lots ran at right angles to Lake Street, as they appeared to run on the plat, and the survey and drawing were made on that assumption. He later discovered that all of the lots in that section of the city were originally laid off parallel to the section lines as run by the original government survey, that the lots in section 15 run east and west with a slight variation to the south in line with the north section line and did not run at right angles to the street. This discovery was confirmed by a dozen or more surveys which he had since made in the immediate area. He made a second survey of the lots at the request of counsel for both parties after the first trial. In making this survey he ran the east and west lines with the same variation or offset as the section line which put the northeast corner of Lot 75 about four and one-half feet south of a point located by running the line at right angle to the street, and instead of the line running two and one-half feet under appellee's servant

house as he had found in the first survey, it actually ran about two feet south of the corner of said house.

Cobb further testified that other side lines of the four lots in the block were marked by a fence or hedge line bearing to the southeast and that when said lines were run according to the variation of the section line, it would give each lot 56 feet in front and back as indicated on the plat. If the line between the lots is run at right angle to the street, then appellants would have about 61 feet on the east end of Lot 75 while appellee would have about 51 feet on the east end of her lot. He also stated that in drawing the lots on such a small scale as that used in the recorded plat, the slight variation in the section line would hardly be noticeable but that such angle should have been given. He denied any interest in the case except to correct the mistake made in the first survey.

Appellants argue that all conveyances of the lots in question have been made with respect to the plat filed by Blythe in 1905 which shows the lines running at right angles to the street and that the trial court had no authority to establish a different line. As previously indicated, the lots in question were conveyed by Blythe under a metes and bounds description long before he filed the plat of record, and before there was a second and third addition to the original town of Blytheville. The discrepancy in size of the lots as originally conveyed by Blythe, and as subsequently platted, apparently resulted from an allowance for alleys which run east and west at each end of the block.

The findings of fact of a trial judge sitting as a jury are given the same force and effect as a jury verdict and will not be disturbed on appeal if there is any substantial evidence to support such findings. *Gray* v. *Ford, Bacon & Davis, Inc.*, 210 Ark. 995, 198 S. W. 2d 508; *Wallis* v. *Stubblefield*, 216 Ark. 119, 225 S. W. 2d 322. In our opinion the testimony of the county surveyor affords ample support for the findings and judgment of the circuit court.

Affirmed.